**Alexander Stuart MacCULLOCH,**
**Plaintiff,**

v.

**CAROLINA MINES, Incorporated,**
**Defendant.**

**Civ. No. 1139.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Oct. 29, 1956.

John P. Kennedy, Jr., Charlotte, N. C., W. F. Womble, Winston Salem, N. C., for plaintiff.

J. R. Davis, Kings Mountain, N. C., Ernest R. Warren, Gastonia, N. C., for defendant.

WARLICK, District Judge.

This is an action instituted by plaintiff, a citizen of Vancouver, British Columbia, Canada, against the defendant, a North Carolina corporation, with its principal office in Kings Mountain in Cleveland County, in the Western District of North Carolina. This court has jurisdiction under diversity and the amount sought as damage.

The complaint originally filed in addition to the usual prayer for relief had set out therein five separate and distinct items in which relief from the defendant was sought. By admissions in the answer, evidence obtained from interrogatories and under stipulations properly filed of record, the whole of the controversy can and by agreement will now be determined under one theory of the case as it is stipulated.

Plaintiff, a mining engineer with long experience in mines and minerals, after considerable exploration and inspection, prospecting and assaying, secured a ninety-nine years lease from Cleveland Minerals, Inc., on the 19th day of May, 1954, to a tract of land containing 261½ acres, lying and being in Gaston County, North Carolina, as is evidenced by a recordation thereof in the public registry of Gaston County, in Book 618 at page 485.

The defendant received its certificate of incorporation from the Secretary of State of North Carolina on November 2, 1954, with the plaintiff and J. E. Herndron and J. J. Mullinax as the three incorporators thereof, each with one share of stock. The objects of the defendant, as set out in its charter, being primarily for prospecting and exploration for ores, metals, and minerals, including kyanite, mica, tin, iron and other minerals, and metals, and the mining thereof for commerical purposes.

The original certificate of incorporation was for a total authorized capital stock of one million shares at the par value of one dollar per share. Subsequently an amendment was filed to the certificate and the authorized capital stock of the defendant was increased from one million dollars to two million dollars, divided into two million shares, at the par value of one dollar per share.

At the first meeting of the stockholders, had on May 23, 1955, five directors were elected, four of whom were present and accepted such office. At that meeting the plaintiff was elected President and Treasurer. J. B. Hamilton was elected Assistant Treasurer, J. J. Mullinax, Assistant Secretary, and J. E. Herndron, Vice President. At this meeting the following took place and is copied from the Minute Book, pages 17 and 18, and made a part of these find-

ings for that I am informed that this action on the part of the directors is the controlling one in that it is the contract of sale of the lease and its assignment by plaintiff to defendant, and that the interpretation of this contract by the court will determine the controversy.

"Mr. MacCulloch, Chairman of the meeting, stated that he had acquired a 99-year lease on the tract of land containing 261½ acres, located at Craigmont in Gaston County, North Carolina, from Cleveland Minerals, Inc. on the 19th day of May, 1954, said lease is now on record in the Register of Deeds Office in Gaston County in Book 618 at Page 485; that he had prospected this tract of land and had ascertained thereby that said tract of land contained Kyanite in commercial quantities and of a high commercial grade; that said tract of land, and the minerals located thereon, had been assayed and had mineralogical tests made pertaining thereto by the State Laboratories at Asheville, North Carolina; that said tests had disclosed that the kyanite ore was of commercial value and subject to floatation treatment; that Harry J. Wolf of #1 Park Lane, New York, N. Y., an independent mining and consulting engineer, had investigated the kyanite ore deposit and under date of Feb. 21, 1955 had submitted his report pertaining thereto. Mr. MacCulloch presented to the meeting the lease which he held pertaining to the premises on which the kyanite ore deposit discussed in the report from Mr. Wolf was located. The terms and provisions of this lease were reviewed in detail.

"Mr. MacCulloch offered to transfer and assign to the company the above mentioned leasehold interest containing the kyanite ore deposit discussed and reviewed in the report from Mr. Wolf, and including therewith all moneys heretofore expended by Mr. MacCulloch in exploring and developing said leasehold interest in consideration of the company's issuing to him 35 percent of all shares of its common stock of the par value of $1 per share which the said Carolina Mines, Inc. shall issue and sell from time to time, but that the total amount of said stock which the said A. S. MacCulloch shall receive shall not exceed 700,000 shares, which will be 35 percent of the total authorized capital stock of the corporation.

"The offer of Mr. MacCulloch was discussed and reviewed in detail. (Mr. MacCulloch took no part in the discussion pertaining to his offer and stated that he would not participate in any further consideration of the offer which he had made and would not vote thereon, and withdrew from the meeting until such time as the remaining directors could reach a decision pertaining to his offer.) The remaining directors, after discussing the offer submitted by Mr. MacCulloch, and after further reviewing the terms and provisions of the lease and the report of Harry J. Wolf, submitted to Mr. MacCulloch under date of Feb. 21, 1955, and the report from the North Carolina State Laboratories at Asheville, N. C., unanimously decided to accept the offer and found that the value of the assets being received by the company under and pursuant to the offer from Mr. MacCulloch were worth many times the value of $700,000 represented by the 700,000 shares of stock to be issued to Mr. MacCulloch. It was moved and unanimously carried that the officers of the company be and they are hereby authorized and directed to issue to A. S. MacCulloch or his assigns 35 percent of the outstanding stock issued and sold, or to be sold by the Carolina Mines, Inc. from time to time upon receipt by the company of an assignment of said leasehold interests.

"After the action set out above had been taken, Mr. MacCulloch rejoined the meeting."

424

Evidently at a later date dissension arose between the plaintiff and the other stockholders and directors of defendant with respect to the plaintiff's stock in the corporation, particularly so since 226,941 shares had been sold and issued, as is shown by the stock book of the corporation and none had been delivered to the plaintiff in part payment to him for the lease of the mineral rights theretofore transferred and assigned to the defendant. This misunderstanding finally resulted in the filing of this suit and brings about this decision. Some difficulty likewise arose from the proposed sale and its offering of not exceeding 298,000 shares of stock without first having received approval from the Securities and Exchange Commission.

During the course of the negotiations leading up to the final proposal, plaintiff had suggested that the corporation issue to him in one block 700,000 shares of its stock in full payment and satisfaction for his mineral rights lease but this was not acceptable, resulting in his subsequent offer as is shown by the minutes of the corporation set out herein.

As an aid to the court from the evidently narrowly drawn distinction between the claims of the parties, counsel was asked to put their respective contentions in writing. These I incorporate as they certainly are self-explanatory.

Mr. Womble States Plaintiff's Contentions:

"That the Plaintiff sold his lease to the corporation for 700,000 shares, which is 35% of the total authorized stock of the corporation of 2 million shares; that rather than issue all 700,000 shares to him immediately, it was agreeable with him and he offered to have his shares issued to him pro-rata as the stock should be issued by the corporation so that at all times he would have 35% of the outstanding stock of the company to the total of 700,000 shares, which would be 35% of the 2 million shares. That under the present state of facts it has been stipulated 226,941 shares have been is-

sued exclusive of the shares to which he is entitled—in other words, he has no shares. He, at this time, is entitled to have issued to him 121,-660 shares. As those shares should be issued to him, it would make a total issued and outstanding of 347,-601 shares. 35% of 347,601 shares is 121,600 shares.

\* \* \* \* \* \*

Mr. Davis States Defendant's Contentions:

"I would like to call the Court's attention to the defense contention is based on the motion that was made and carried at the first directors meeting, to-wit: 'It was moved and unanimously carried that the officers of the company be and they are hereby authorized and directed to issue to A. S. MacCulloch or his assigns 35% of the outstanding stock issued and sold or to be sold by the Carolina Mines, Incorporated, from time to time upon receipt by the company of an assignment of said leasehold interest.'

"Based on the contract, our contention is that Mr. MacCulloch is entitled to 35% of all the stock issued and sold up to 700,000 shares—that is the maximum that he could get even though it might be a 10 million dollar corporation, he could never get beyond 700,000 shares—but he is to have 35% of all stock issued and sold to the public, but not exceeding 700,000 shares in all, and that he is not to have this 35% until the corporation had sold to the public 298,000 shares at which time he is to have the 35% of what they sold sold and delivered. That is our contention."

"A contract is an agreement, upon sufficient consideration, to do or not to do a particular thing". 2 Blackstone 442. It consists of an agreement, a consideration, and a thing to be done. An agreement is the meeting of minds in a common intention and implies two or more parties. The common intention is that upon which the minds of the parties

meet, and is what both agree, not what either of them thought. The offer and its acceptance constitute the agreement and makes possible the contract.

Looking at the matter in that particular light, it would seem that the plaintiff as he offered so to do, was to transfer and assign to the defendant his leasehold interest free and clear of any incumbrance, "in consideration of the company's issuing to him 35% of all shores of its common stock of the par value of $1.00 per share, which the said Carolina Mines, Inc. shall issue and sell from time to time, but that the total amount of said stock which the said A. S. MacCulloch shall receive, shall not exceed 700,000 shares, which will be 35% of the total authorized capital stock of the corporation."

This is a plain and understandable offer to sell and if it is to be accepted, it would be done in the manner of its offering. This the directors unanimously did as the minutes disclose in the following action taken:

"It was moved and unanimously carried that the officers of the company be and they are hereby authorized and directed to issue to A. S. MacCulloch or his assigns 35 percent of the outstanding stock issued and sold, or to be sold, by the Carolina Mines, Inc. from time to time upon receipt by the company of an assignment of said leasehold interest."

Surely that could only have one meaning if one would give to it a proper interpretation. Therefore in issuing and selling its stock defendant will follow the mechanics of this rule:

| No. Shares Issued | No. Shares available for sale to public | No. shares to be issued to plaintiff |
| --- | --- | --- |
| 100 | 65 | 35 |
| 1,000 | 650 | 350 |
| 100,000 | 65,000 | 35,000 |
| 1,000,000 | 650,000 | 350,000 |
| 2,000,000 | 1,300,000 | 700,000 |

I am consequently of the opinion that this ratio under the contract is to be preserved and that when so preserved the company will sell to the public 65 percent of the outstanding stock authorized and approved for sale and will issue 35 percent thereof to the plaintiff.

Counsel will submit decree.