BARRY K. BUCHELE, M.D. v. PINEHURST SURGICAL CLINIC, P.A.

No. 8520SC620

(Filed 15 April 1986)

**1. Master and Servant § 9— employee's right to bonus—conclusion unsupported by findings**

   The trial court's broad conclusion that the granting of bonuses to employees was discretionary with defendant's board of directors was incomplete and not entirely supported by the finding of fact that "bonuses may be paid by [defendant] pursuant to a bonus plan regularly adopted by the Board of Directors," since the evidence showed that the board did not have the discretion, after it had already determined that plaintiff's department would receive a bonus, to alter the bonus plan for that department to exclude plaintiff from the bonus distribution.

**2. Corporations § 16— agreement to purchase stock—payment not tendered—no right to distribution of earnings to shareholders**

   Plaintiff was not entitled to a distribution of retained earnings to shareholders in defendant where plaintiff's employment contract provided that plaintiff agreed to buy one share of stock in defendant at the beginning of his second year of employment, but plaintiff never bought the required share, nor did he tender payment within a reasonable time or demonstrate circumstances excusing such tender.

   Judge WEBB dissenting.

APPEAL by plaintiff from *Albright, Judge.* Judgment entered 24 January 1985 in Superior Court, MOORE County. Heard in the Court of Appeals 21 November 1985.

*Joe McLeod and John Michael Winesette for plaintiff appellant.*

*Van Camp, Gill, Bryan, Webb & Thompson, P.A., by James R. Van Camp, for defendant appellee.*

BECTON, Judge.

In this contract dispute, the plaintiff, Barry K. Buchele, M.D., brought an action against his former employer, Pinehurst Surgical Clinic, P.A. (Pinehurst), claiming that he was entitled to a share of profits and retained earnings under his employment contract. After a non-jury trial, the trial court entered judgment for the defendant, and Dr. Buchele appeals.

I

Dr. Buchele is licensed to practice medicine in North Carolina and specializes in obstetrics and gynecology. Dr. Buchele began working for Pinehurst on 20 August 1979 without a written contract. He received a copy of his contract approximately eight months later, but he did not sign it until 17 March 1981. This contract was similar to a sample contract that was shown to Dr. Buchele before he began working for Pinehurst.

As part of his employment compensation, Dr. Buchele participated in his department's profit-sharing plan. Each of Pinehurst's several departments accounted for and shared its own profits according to a plan approved by the Pinehurst Board of Directors. In Dr. Buchele's department, any profits distributed as bonuses were to be shared equally among those doctors who had shown a profit during the period of time covered by the bonus. His contract also provided that in the beginning of his second year at Pinehurst, Dr. Buchele would purchase one share of stock in Pinehurst.

On 8 April 1981, at a Board of Directors meeting, Dr. Buchele formally was asked to resign or to have his employment terminated by Pinehurst. In order to assist Dr. Buchele in accomplishing the requirements for certification in his specialty, the Board of Directors consented to making Dr. Buchele's resignation effective as of 20 August 1981. The Board accepted the resignation on 8 April 1981 with "all due rights of his contract" recognized up through 20 August 1981.

Also on 8 April 1981, apparently prior to the meeting of the Board of Directors, Pinehurst's Director of Administration sent a letter to Dr. Buchele stating that the Obstetrics and Gynecology Department accepted his resignation effective 20 August 1981, and that he would share in his department's subsequent bonus distribution if his financial status in the department were profitable. Although a bonus was distributed to Dr. Buchele's department, and Dr. Buchele's financial status was profitable during the relevant period of time, he never received any share of this bonus distribution under his department's plan. The other three doctors in his department divided the profits equally among themselves.

In May 1981, the Board of Directors voted to distribute re-tained earnings to shareholders of record. Dr. Buchele had never purchased the share of stock referred to in his employment con-tract, but he was listed in a memo as being entitled to receive a share of retained earnings equal to $3,046.00. He did not receive any of the retained earnings, which were distributed in Septem-ber 1981.

In June 1981, Dr. Buchele requested information regarding benefits owed to him. He received a letter from the Department of Obstetrics and Gynecology and the Board of Directors dated 22 June 1981 delineating the benefits he was to receive. The letter did not mention bonuses, profits or retained earnings. Subse-quently, Dr. Buchele was told orally that he would receive no bonus. He continued working and accepting his salary until 20 August 1981.

After receiving evidence and hearing arguments in a nonjury trial, the trial court made the following critical findings of fact, among others:

> That paragraph 11 of the contract provided, in essence, that bonuses may be paid by the Corporation pursuant to a bonus plan regularly adopted by the Board of Directors. That the payment of bonuses was discretionary with the Board of Directors.
>
> . . . .
>
> That in May of 1981, the Board of Directors of the Defendant Corporation voted to distribute the retained earnings of the Defendant to shareholders of record. That even though there was a memo distributed showing that the Plaintiff could receive $3,046.00 in retained earnings, the Plaintiff did not receive retained earnings as he was not a shareholder of the Defendant. That no other nonshareholder physician-employee received retained earnings.

The Court concluded as a matter of law:

> That pursuant to the terms of the written contract dated March 17, 1981 the distribution of bonuses was discretionary with the Defendant Corporation.

That the Plaintiff was not a shareholder in the Defendant Corporation at the time that the retained earnings of the corporation were distributed and thus was not entitled to the retained earnings distribution.

Dr. Buchele contends on appeal that the trial court erred (1) in finding facts not supported by the evidence and (2) in failing to find facts as proposed by plaintiff.

II

[1]  Dr. Buchele apparently concedes that the Pinehurst Board of Directors had the discretion either to pay bonuses or not to pay bonuses. The language in the contract, "[f]irst party may pay bonuses," compels such a conclusion. Nonetheless, Dr. Buchele asserts, and we agree, that the issue in this case is whether, once the Board decided to pay bonuses to Dr. Buchele's department, it was obligated to distribute the bonuses according to the plan already adopted and approved by the Board for the department in which Dr. Buchele worked.

The contract signed by Dr. Buchele included the following paragraphs:

Subject to his due performance of his responsibilities hereunder and his observance of all the requirements herein set forth, second party [Dr. Buchele] shall enjoy all the benefits provided by first party [Pinehurst] for its professional employees, including participation in any profit sharing . . . plans.

. . . .

First party may pay bonuses to second party pursuant to a regularly adopted bonus plan of the department of which he is a member and which is approved by the Board of Directors of first party.

An internal Pinehurst memorandum entitled "PINEHURST SURGICAL CLINIC, P.A. BONUS DISTRIBUTION PLAN" provided, in part, ". . . the following bonus distribution plans, which have been submitted by the departments, are adopted to provide motivation and financial reward to those employees who have participated in helping the department reach corporate goals."

Specific plans for some of the departments provided for distribution of bonuses "in relationship to the productivity of the individual employee to the total productivity of his department." This was the plan for Class I employees (medical doctors) in the Urology, General Surgery, Plastic & Reconstructive Surgery, and Thoracic and Cardiovascular Surgery departments. The plan for Dr. Buchele's department, Obstetrics and Gynecology, provided: "The bonus will be distributed equally among the Class I employees of the department." The same language was adopted for the Orthopaedic Department and the Ear, Nose, Throat and Maxillofacial Surgery Department. A separate memorandum shown to Dr. Buchele at his employment interview with Pinehurst stated that his first year salary would be $45,000 plus moving expenses and that if he created a profit, he would "share equally in the Department's profit."

Pinehurst argues that the Board had given bonuses to Dr. Buchele in the past even though he was not in a profit situation, and on occasion the Board had elected not to distribute bonuses at all. One witness for Pinehurst testified that the Board had the absolute discretionary authority "to set bonuses or not set bonuses." We believe this misses the point. There was no evidence that a profitable physician, in a department that shared bonuses equally, was ever denied a bonus after the Board had granted bonuses to that physician's department and the other physicians in the department had shared the bonuses equally. The issue is whether the Board had the discretion to declare a bonus distribution for a department and then alter the previously adopted plan to the detriment of one doctor within that department. This issue was not explicitly addressed by the trial court, and it should have been resolved in the negative.

It appears from the evidence that the Pinehurst Board of Directors originally intended that Dr. Buchele would share equally in bonuses. The minutes of the Executive Committee meeting on 4 June 1980 stated in part:

> A fair amount of discussion ensued about a new man joining a department and the administrative expenses involved with such arrangements. At present, Ob-Gyn is scaling their $60,000 of administrative expense over three years regarding Dr. Buchele, and Dr. Buchele is meeting this obli-

gation through salary, whereas he shares equally in bonuses. The General Surgery Department is dealing with the same problem via the bonus mechanism, not through salary.

This is consistent with the bonus distribution plans mentioned above. Dr. Buchele, a member of the Ob-Gyn Department, which shared bonuses equally, met his obligation for administrative costs through an adjusted or lower salary rather than a reduced bonus. The same obligation was met through adjusted bonuses, rather than salary, in the General Surgery Department, which shared bonuses "in relationship to the productivity of the individual employee to the total productivity of his department."

A bonus offered by an employer to encourage more efficient service by an employee is an enforceable supplementary contract even though the bonus may be measured by earnings or productivity rather than by a fixed sum. *Chew v. Leonard*, 228 N.C. 181, 44 S.E. 2d 869 (1947). Although the bonus plan in the case at bar was clearly discretionary in part, it was, by its own terms, "adopted to provide motivation and financial reward" to productive employees. We conclude that Dr. Buchele reasonably expected to share profits awarded to his department according to its specific plan. The trial court's broad conclusion that the granting of bonuses was discretionary with the Board of Directors is incomplete and not entirely supported by the finding of fact that "bonuses may be paid by the Corporation pursuant to a bonus plan regularly adopted by the Board of Directors." The evidence shows that the Board did not have the discretion, after it had already determined that Dr. Buchele's department would receive a bonus, to alter the bonus plan for that department to exclude Dr. Buchele from the bonus distribution. The judgment of the trial court is reversed on this issue, and the case is remanded for the court to determine the share of the bonus distribution to which Dr. Buchele was entitled, plus interest.

III

[2] The trial court found and concluded that Dr. Buchele was not a shareholder in Pinehurst. Dr. Buchele's contract provided in part:

Second party agrees to buy one (1) share of stock in first party at the beginning of his second year of employment for

One Hundred ($100.00) Dollars plus an equal share of the un-
distributed earnings and the value of the inventory as deter-
mined by the first party. At the termination of second
party's employment first party shall repurchase the stock for
One Hundred ($100.00) Dollars.

Pinehurst did not offer to sell, and Dr. Buchele did not seek or re-
quest to buy, a share of the Pinehurst Clinic. Dr. Buchele argues,
without citing any authority, that because (1) he fulfilled his
obligation under the contract for the required year, (2) Pinehurst
recorded his share of retained earnings in its account ledger, and
(3) Pinehurst failed to tender a share of stock for the nominal
price of $100.00 to Dr. Buchele, that he became an equitable
stockholder entitled to his share of the retained earnings.

Pinehurst is a professional association under N.C. Gen. Stat.
Sec. 55B (1982), and it may issue capital stock to licensed medical
doctors such as Dr. Buchele. The Business Corporation Act, Chap-
ter 55, applies to Pinehurst to the extent that it does not conflict
with the Professional Corporation Act. G.S. Sec. 55B-3.

Assuming, *arguendo*, that Pinehurst and Dr. Buchele entered
into a binding post-incorporation subscription agreement, *see* G.S.
Sec. 55-43(a), (b) & (c); *cf. MacCulloch v. Carolina Mines, Inc.*, 145
F. Supp. 421 (W.D.N.C. 1956), Dr. Buchele had the right to enforce
the agreement "upon tender of his own performance or circum-
stances excusing such tender." Robinson, *North Carolina Corpora-
tion Law and Practice* Sec. 19-8 (3rd ed. 1983); *accord Schwartz v.
Manufacturers' Casualty Insurance Co.*, 335 Pa. 130, 6 A. 2d 299
(1939); Annot., 122 A.L.R. 1048 (1939). The terms of the agreement
indicate the parties' intention to exchange one share of stock for
$100.00 plus an equal share of the undistributed retained earnings
and inventory "at the beginning of [Dr. Buchele's] second year of
employment."

Although Dr. Buchele did not tender payment for the stock
at the beginning of his second year, the law would afford him a
"reasonable time" within which to tender payment. *See Wilson v.
Duplin Telephone Co.*, 139 N.C. 395, 52 S.E. 62 (1905); *cf. Hurdle v.
White*, 34 N.C. App. 644, 651, 239 S.E. 2d 589, 593 (1977) (When no
time of performance is specified, the law implies that an option to
buy land may be exercised within a reasonable time.), *disc. rev.
denied*, 294 N.C. 441, 241 S.E. 2d 843 (1978). While Dr. Buchele

was employed, the agreement to purchase the stock was execu-
tory on both sides. Of course, had Dr. Buchele tendered payment
at that time, Pinehurst could not effectively withhold the stock
certificate solely to avoid distributing retained earnings to him.
*See generally* 18A Am. Jur. 2d *Corporations* Sec. 733, at 604
(1985). Nonetheless, Dr. Buchele did not tender payment at any
time during his employment, even though the Board voted to dis-
tribute retained earnings in May 1981, the June 1981 letter
(issued to Dr. Buchele at his request) did not mention his entitle-
ment to retained earnings, and he was told before he left Pine-
hurst that he would receive no bonuses. Even in his Complaint,
Dr. Buchele failed to assert his ability and willingness to tender
payment, to allege his right to retained earnings, or to request
that they be awarded to him. Under the facts of this case, Dr.
Buchele neither tendered payment within a reasonable time nor
demonstrated circumstances excusing such tender. There is no
need to remand the case for findings on this issue. We affirm this
portion of the case.

For the reasons set forth above, we

Reverse and remand in part and affirm in part.

Judge WEBB dissents.

Judge COZORT concurs.

Judge WEBB dissenting.

I dissent. I believe the evidence showed and the superior
court properly found that it was within the discretion of the
directors of Pinehurst Surgical Clinic, P.A. as to whether to pay a
bonus to the plaintiff who was not a stockholder in the corpora-
tion. I vote to affirm.